**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MAYNARD BAKER et al.,**

                    Plaintiffs,          1:10-cv-1016
                                             (GLS/RFT)

        v.

**NEW YORK STATE
DEPARTMENT OF
ENVIRONMENTAL
CONSERVATION et al.,**

                    Defendants.
_____

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| **FOR THE PLAINTIFFS:** | |
| Briggs, Norfolk Law Firm | MATTHEW D. NORFOLK, ESQ. |
| 2296 Saranac Avenue | |
| Lake Placid, NY 12946 | |
| | |
| **FOR THE DEFENDANTS:** | |
| HON. ERIC T. SCHNEIDERMAN | SUSAN LEE TAYLOR |
| New York State Attorney General | Assistant Attorney General |
| The Capitol | |
| Albany, NY 12224 | |

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiffs Maynard Baker, Douglas K. Irish, Mark Schumaker, Brett A.

Kilroy, Louis Giovannini and Richard Kenny[1] commenced this action against various New York State defendants,[2] alleging violations of Title II of the Americans with Disabilities Act (ADA).[3]  (*See* 2d Am. Compl., Dkt. No. 55.)  Pending is defendants' motion to dismiss.  (*See* Dkt. No. 41.)  For the reasons that follow, the motion is granted in part and denied in part.

## II.  Background[4]

In 1971, New York State enacted the Adirondack Park Agency Act to "insure optimum overall conservation, protection, preservation, development and use of the unique scenic, aesthetic, wildlife, recreational, open space, historic, ecological and natural resources of the Adirondack park." N.Y. Exec. Law § 801 (McKinney 2005).  The Act directed the APA

---

[1]  The Clerk is directed to amend the caption to include plaintiffs Kilroy and Giovannini, and to terminate former plaintiffs Dixon and Franklin, as neither is listed in the Second Amended Complaint.  (*See* 2d Am. Compl. ¶¶ 11-26, Dkt. No. 55.)

[2]  Plaintiffs' Second Amended Complaint names the following defendants: State of New York; New York State Department of Environmental Conservation (DEC); New York State Adirondack Park Agency (APA); Pete Grannis, in his official capacity as Commissioner of the DEC; Curt Stiles, in his official capacity as Chairman of the APA; and, David Patterson, Governor of the State of New York.  (*See id.* ¶¶ 27-51.)  However, as plaintiffs note, since the time this action was commenced, Grannis, Stiles and Paterson are no longer in the official positions listed.  (*See id.*)  Accordingly, the Clerk is directed to substitute defendant Joseph Martens for Pete Grannis; defendant Leilani Crafts Ulrich for Curt Stiles; and Andrew M. Cuomo for David Patterson.

[3]  *See* 42 U.S.C. §§ 12101-12300.

[4]  Unless otherwise noted, the allegations are drawn from plaintiffs' Second Amended Complaint and presented in a light most favorable to them.

to consult with the DEC and develop a "Master Plan for Management of State Lands." *Id.* § 816.  Accordingly, the DEC promulgated rules and regulations that, among other things, prohibited the use of "float planes, motorized vehicles and bicycles (non-motorized vehicles) to access lakes in areas of the Adirondack Park classified by the [Master Plan] as Wilderness, Primitive or Canoe." (2d Am. Compl. ¶ 104.)  Although universally applicable, plaintiffs—all of whom suffer from impairments that affect their ability to walk, (*see id.* ¶¶ 53-73)—claim that the rules and regulations have rendered thirty-eight lakes and ponds[5] effectively inaccessible for disabled individuals such as themselves.[6]  (*See, e.g.*, *id.* ¶¶ 87-88, 165.)

Dubbing these lakes and ponds the "Inaccessible Remote Lakes," plaintiffs aver that they "contain ecological, geological and scenic values

---

[5] The lakes and ponds are: West Lake, South Lake, Cedar Lake, Whitney Lake, Mud Lake, Metcalf Lake, Horn Lake, Pillsbury Lake, Spruce Lake, Shallow Lake, Lower Sister Lake, Queer Lake, Constable Pond, Terror Lake, Pigeon Lake, Cascade Lake, Cage Lake, Salmon Lake, Negro Lake, Rock Lake, Sunshine Pond, Lyon Lake, Witch Hopple Pond, Big Deer Pond, Lake Lila, Clear Pond, Crooked Lake, Sand Lake, Upper Siamese Pond, Lower Siamese Pond, Round Pond, Puffer Pond, Cascade Pond, Stephen's Pond, Silver Lake, Pharoah Lake, Crane Pond and Round Pond.  (*See* 2d Am. Compl. ¶ 74.)

[6] For a full description of the barriers plaintiffs face with respect to accessing the lakes and ponds, the court refers the parties to the Second Amended Complaint.  (*See id.* ¶¶ 89-102.)  At this juncture, it suffices to say that plaintiffs believe there are natural and man-made barriers that they cannot overcome by reason of their impairments.  (*See id.* ¶¶ 107-10.)

3

unlike any other lands and bodies of water located in the Adirondack Park." (*Id.* ¶¶ 74, 81.)  Each of the plaintiffs "desire" to visit the Lakes, but have, and continue to be, deterred from doing so because of defendants' prohibition on motorized vehicles.  (*See id.* ¶¶ 76, 107, 109, 119-22.) While they acknowledge the existence of Policy 3—the DEC's policy entitled "Motorized Access Program for People with Disabilities"—plaintiffs claim that "defendants do not have a program or mechanism that offers . . . disabled people . . . a reasonable accommodation" to access the Lakes.[7] (*Id.* ¶¶ 158-59.)  Nevertheless, in 2009, plaintiff Maynard Baker contacted the DEC to request permission to "utilize a float plane to access" the Lakes.  (*Id.* ¶ 163.)  The request was denied "and no other accommodation was made by defendants in response to . . . Baker's request."  (*Id.*)

Plaintiffs now allege that defendants violated the ADA by failing to provide them with a reasonable accommodation, and by enacting facially neutral rules and regulations that have a disparate impact on individuals with disabilities.  (*See id.* ¶¶ 152-202.)  To redress these violations, plaintiffs seek declaratory and injunctive relief, including the nullification of

---

[7] With respect to Policy 3, plaintiffs allege that is essentially inapplicable in this case as it only "provides limited motorized access to certain unspectacular parts of the Adirondack Park."  (*Id.* ¶ 160.)

4

N.Y. Envtl. Conserv. Law §§ 1-0101, 3-0301, 9-0105 (McKinney 2005), N.Y. Exec. Law § 816 and 6 N.Y.C.R.R. §§ 190.13(f)(iv), (v), 190.33(b)(2), 196.4 and 196.8.  (*See id.* at 36-37.)

### III.  Standard of Review

The standard of review under Fed. R. Civ. P. 12 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV.  Discussion

As a threshold matter, defendants challenge the court's subject-matter jurisdiction, arguing that plaintiffs failed to satisfy the injury-in-fact requirement of constitutional standing.  (*See, e.g.,* Dkt. No. 60 at 3-5.[8])  Alternatively, defendants contend that plaintiffs' causes of action fail as a matter of law, and that, even if the claims are viable, the state and its agencies are immune from suit.  (*See id.* at 6-20.)  In addition to filing a response to defendants' motion, plaintiffs were permitted to amend their complaint for a second time; collectively, their submissions evidence a

---

[8]  For the sake of clarity, the court refers to defendants supplemental memorandum of law, which specifically addresses the purported deficiencies in the Second Amended Complaint.  (*See* Dkt. No. 60.)

5

general disagreement with defendants' assertions.  (*See generally* 2d Am. Compl.; Dkt. No. 43.)  Because "Article III jurisdiction is always an antecedent question," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), the court first addresses plaintiffs' standing to sue, followed by the merits of the reasonable accommodation and disparate impact claims. *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006).

### A.  Constitutional Standing

Defendants allege that plaintiffs have not established an actual injury insofar as they failed to demonstrate an inability to access the Lakes.  (*See* Dkt. No. 60 at 5.)  Though plaintiffs' response offers little in the way of a rebuttal, (*see* Dkt. No. 43, Attach. 1 at 15-18), their Second Amended Complaint alleges, in sum and substance, that each plaintiff has been deterred from visiting the Lakes because of defendants' noncompliance with the ADA, (*see* 2d. Am. Compl. ¶¶ 76, 107, 109, 119-22).  At this juncture, this allegation is sufficient to confer standing.

Described as an "irreducible constitutional minimum," standing has

6

three elements, the first of which is the injury-in-fact requirement.[9] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy this initial component, "the plaintiff must have suffered . . . an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks and citations omitted). Although plaintiffs have the burden to establish the requisite injury-in-fact, they may do so through "general factual allegations of injury resulting from the defendant's conduct" at the pleading stage. *Id.* at 561. Stated another way, generalized allegations are presumed to embrace the specific facts necessary to substantiate them. *See id.* Indeed, in a civil rights case—particularly one under the ADA—a "broad view of constitutional standing" is appropriate because "private enforcement suits are the primary method of obtaining compliance with the Act." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation marks and citation omitted).

In the context of the ADA, standing "often turns on the nature and source of the claim asserted." *Id.* (internal quotation marks and citation

---

[9] Defendants have not challenged plaintiffs' satisfaction of the second and third standing components; a discussion thereof is thus unnecessary. (*See generally* Dkt. No. 60.)

omitted).  Generally, the requisite injury occurs when a plaintiff encounters an accessibility barrier that interferes with his "full and equal enjoyment of the facility on account of his particular disability." *Id.*  The plaintiff need not, however, "await the consummation of threatened injury to obtain preventive relief."  *Farmer v. Brennan*, 511 U.S. 825, 845 (1994) (internal quotation marks and citation omitted).  Where, as here, a plaintiff demonstrates an intent to return to, or is deterred from, visiting a noncompliant facility, he suffers a cognizable injury under Article III.  *See Chapman*, 631 F.3d at 949 (citing *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137-38 (9th Cir. 2002)); *accord Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008).

Here, plaintiffs' allegations regarding their desire to visit the Lakes, and inability to do so, are, at this juncture, sufficient to satisfy the injury-in-fact requirement.  (*See* 2d. Am. Compl. ¶¶ 76, 107, 109, 119-22.)  While the allegations are succinct, there are just enough facts in the Second Amended Complaint to allow the court "to draw the reasonable inference that" plaintiffs are deterred from visiting the Lakes because of defendants'

purported violations of the ADA.[10]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Chapman*, 631 F.3d at 949.   This deterrence constitutes the requisite injury under Article III to allow plaintiffs to proceed with this action. *See Chapman*, 631 F.3d at 949-50.  It follows that defendants' argument with respect to plaintiffs' standing is rejected.

## B.   Reasonable Accommodation Claim

Defendants next argue that even if plaintiffs have standing, their reasonable accommodation claims are not ripe.  (*See* Dkt. No. 60 at 6-8.) Conversely, plaintiffs assert, as they have throughout this litigation, that this lawsuit constitutes a request for a reasonable accommodation to access the Lakes.  (*See, e.g.*, 2d Am. Compl. ¶ 164.)  They further allege—for the first time in the Second Amended Complaint—that plaintiff Baker made a request for float plane access to visit the Lakes in 2009. (*See id.* ¶ 163.)  Although Baker's allegation is sufficient, the remaining plaintiffs' claims are not ripe.

"To prevail on a reasonable accommodation claim, plaintiffs must first provide the governmental entity an opportunity to accommodate them

---

[10]  Notably, plaintiffs will be unable to rest on "mere allegations" if defendants continue to pursue their standing argument throughout this litigation.  *Lujan*, 504 U.S. at 561 (internal quotation marks and citation omitted).

through the entity's established procedures used to adjust the neutral policy in question." *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 579 (2d Cir. 2003).  Here, with the exception of plaintiff Baker, the remaining plaintiffs concede that they never sought an accommodation from DEC, though they acknowledge that a universal access policy exists. (*See* 2d Am. Compl. ¶¶ 158-60, 163-64.)  Indeed, plaintiffs' response—which appears to conflate the concepts of standing and ripeness—is devoid of any controlling legal authority which even suggests that an accommodation request, as distinguished from exhaustion, is unnecessary.  (*See* Dkt. No. 43, Attach. 1 at 18-21, 23.)  By the same token, defendants' remaining assertions, which are directed at Baker's request, are premature, as the nature and scope of the request is unclear. (*See* Dkt. No. 60 at 8-17.)  Accordingly, defendants' motion is granted to the extent that it seeks dismissal of all but plaintiff Baker's reasonable accommodation claim.

**C.** **Disparate Impact Claim**

Finally defendants contend that plaintiffs' disparate impact cause of action is insufficiently pled.  (*See id.* at 18-19.)  Despite being given three attempts to state such a claim, the court agrees that plaintiffs have failed to

10

raise even an inference of discriminatory impact.  (*See* 2d Am. Compl. ¶¶ 180-202.)  Among other things, plaintiffs failed to include the requisite comparison between the affected and unaffected groups, as well as any "statistical evidence to show disparity in outcome between groups."[11] *Tsombanidis*, 352 F.3d at 575.  Presumably, plaintiffs attempted to satisfy this requirement by alleging that zero percent of the Lakes' visitors are disabled, and one hundred percent "are able-bodied people who can walk." (2d Am. Compl. ¶ 190.)  Simply put, this assertion is inadequate to satisfy plaintiffs' burden to show that defendants' otherwise neutral policy, "imposes a significantly adverse or disproportionate impact on a protected group of individuals."  *Tsombanidis*, 352 F.3d at 575 (internal quotation marks and citation omitted).  As such, defendants' motion is granted to the extent that it seeks dismissal of plaintiffs' disparate impact claim.

D.     **Eleventh Amendment Immunity**

Defendants argue, and the court agrees, that the State of New York, the DEC and the APA are immune from suit.  (*See* Dkt. No. 60 at 19-20.) Because it is well settled that "a plaintiff seeking prospective relief from the

---

[11] For a full discussion of the elements of a disparate impact claim, the court refers the parties to the Second Circuit's discussion in *Tsombanidis*, 352 F.3d at 574-77.

11

state must name as defendant a state official rather than the state or a state agency directly," *Santiago v. N.Y. State Dep't of Corr. Servs.*, 945 F.2d 25, 32 (2d Cir. 1991), plaintiff Baker's remaining claims against the State of New York, DEC and APA are dismissed.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** the Clerk is directed to **AMEND** the caption to include plaintiffs Brett A. Kilroy and Louis Giovannini, and to **TERMINATE** former plaintiffs Dixon and Franklin; and it is further

**ORDERED** that the Clerk is directed to **SUBSTITUTE** defendant Joseph Martens for Pete Grannis; defendant Leilani Crafts Ulrich for Curt Stiles; and Andrew M. Cuomo for David Paterson; and it is further

**ORDERED** that defendants' motion to dismiss (Dkt. No. 41) is **GRANTED IN PART** and **DENIED IN PART** as follows:

> **GRANTED** to the extent that it seeks dismissal of plaintiffs Irish, Schumaker, Kilroy, Giovannini and Kenny's reasonable accommodation claims;
>
> **DENIED** to the extent it seeks dismissal of plaintiff Baker's reasonable accommodation claim; and

> **GRANTED** to the extent that it seeks dismissal of plaintiffs' cause of action for disparate impact;
>
> **GRANTED** to the extent that is seeks dismissal of all claims against the State of New York, DEC and APA; and it is further

**ORDERED** that plaintiffs Irish, Schumaker, Kilroy, Giovannini and Kenny are **TERMINATED** as parties; and it is

**ORDERED** that the State of New York, DEC and APA are **TERMINATED** as parties; and it is further

**ORDERED** that defendants file the appropriate responsive pleadings within the time allotted by the rules; and it is further

**ORDERED** that the parties notify Magistrate Judge Treece in order to schedule further proceedings in accordance with this order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 22, 2012
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court

13